IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

TRUSTEES OF THE BRICKLAYER AND
STONEMASONS LOCAL NO. 2 WELFARE
FUND, et al.,

      Plaintiffs,

      v.                                                                                  CIVIL ACTION NO. 2:06cv552

MICHAEL HUDGINS d/b/a HUDGINS
MASONRY, et al.,

      Defendants.

*MEMORANDUM OPINION AND ORDER*

This matter is before the Court on the Motion by Plaintiffs, Trustees of the Bricklayers and Stonemasons Local No. 2 Welfare Fund, et al. for a permanent injunction. Defendants, Michael Hudgins d/b/a Hudgins Masonry, et al. have not filed any documents in opposition to Plaintiffs' motion or complaint. For the reasons stated herein, Plaintiffs' motion for a permanent injunction is **GRANTED**.

**I.  FACTUAL AND PROCEDURAL HISTORY**

On October 2, 2006, Trustees of the Bricklayers and Stonemasons Local No. 2 Welfare Fund, Trustees of the Bricklayers and Stonemasons Local No. 2 Pension Fund, Trustees of the Bricklayers and Stonemasons Local No. 2 Apprenticeship and Training Fund, and Trustees of the Bricklayers and Towel Trades Pension Fund (collectively "Plaintiffs") filed suit against Michael Hudgins doing business as Hudgins Masonry, Michael Hudgins, and Hudgins Masonry

(collectively "Defendants") under Sections 502 and 515 of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1132 and 1145, and under Sections 301(a) and (c) of the Labor Management Relations Act, 29 U.S.C. §§ 158(a) and (c). Plaintiffs allege that Defendants failed to pay contributions to the various plaintiff employee benefit plans, as required under a collective bargaining agreement, during the months of December 2001, October 2004, and May 2005 through December 2006. They also claim Defendants failed to pay the complete contributions for the months of November 2004 through April 2005. Finally, Plaintiffs claim Defendants were late in paying contributions for July 2002 through February 2003, April 2003 through August 2003, October 2003 through September 2004, and November 2004 through April 2005. Defendants have not submitted anything to the Court regarding this matter. The Clerk made an entry of default on January 10, 2007. Plaintiffs now request a permanent injunction.

## II. LEGAL STANDARD

The Court has authority to impose an injunction under ERISA. 29 U.S.C. §§ 1132(a)(3) and 1132(g)(2)(E). The test for issuance of a permanent injunction is primarily based upon the same test used for granting a preliminary injunction. *Wilson v. CHAMPUS*, 65 F.3d 361, 364, 364 n.2 (4th Cir. 1995) (citing *Direx Israel, Ltd v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir. 1991)). In *Blackwelder Furniture Co. v. Seilig Mfg. Co.*, 550 F.2d 189 (4th Cir. 1977), the United States Court of Appeals for the Fourth Circuit (the "Fourth Circuit") established the standard for granting a preliminary injunction. The *Blackwelder* hardship balancing test requires that the court consider: (1) the likelihood of irreparable harm to the movant if the preliminary injunction is denied; (2) the likelihood of harm to the nonmovant if the requested relief is granted; (3) the likelihood that the movant will succeed on the merits; and (4) the public interest.

*Direx Israel*, 952 F.2d at 812. Under the four-part inquiry, "the first two factors regarding the likelihood of irreparable harm to the plaintiff if [the preliminary injunction is] denied and of the harm to the defendant if [the injunction is] granted are the most important." *Manning v. Hunt*, 119 F.3d 254, 263 (4th Cir. 1997). The plaintiff bears the burden of establishing that each of these factors supports granting the injunction. *Id.*; *see also Technical Publ'g Co. v. Lebhar-Friedman, Inc.*, 729 F.2d 1136, 1139 (7th Cir. 1984); *Shaffer v. Globe Prot., Inc.*, 721 F.2d 1121, 1123 (7th Cir. 1983).

The Fourth Circuit holds that it is axiomatic that a "clear showing of irreparable harm" be a prerequisite to the issuance of a preliminary injunction. *Direx Israel*, 952 F.2d at 812; *see also Faulkner v. Jones*, 10 F.3d 226, 237 (4th Cir. 1993) (Hamilton, J., dissenting) (stating that the "inability to establish irreparable harm 'is by itself a sufficient ground upon which to deny a preliminary injunction.'" (quoting *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987))); *Rum Creek Coal Sales, Inc. v. Caperton*, 926 F.2d 353, 360 (4th Cir. 1991) (finding that in order for a movant "to succeed, [the movant] must show that it will sustain irreparable harm without a preliminary injunction."). Irreparable harm is the first factor to be considered because, "The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 506-07 (1959). Moreover, the required irreparable harm must be "neither remote nor speculative, but actual and imminent." *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989), *quoted in Direx Isreal*, 952 F.2d at 812; *see also Rum Creek Coal Sales*, 926 F.2d at 360 (stating that, "The 'balance of hardship' test does not negate the requirement that the [movant] show some irreparable harm."); *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987) (stating

that "[E]stablishing a risk of irreparable harm is not enough. A movant has the burden of proving a 'clear showing of immediate irreparable injury.'" (quoting *Continental Group, Inc. v. Amoco Chems. Corp.*, 614 F.2d 351, 359 (3d Cir. 1980)).

Should the Court find that the movant has made a "clear showing" of irreparable injury absent injunctive relief, the next judicial task is "to balance the 'likelihood' of irreparable harm to the movant [from failure to grant interim relief] against the 'likelihood' of harm to the nonmovant [from the grant of such relief]." *Blackwelder*, 550 F.2d at 195. "If, after balancing those two factors the balance tips decidedly in favor of the plaintiff, a preliminary injunction will be granted if the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation." *Rum Creek Coal Sales*, 926 F.2d at 359 (internal quotes and citations omitted). In addition, "As the balance tips away from the plaintiff, a stronger showing on the merits is required." *Id.*

The final factor that a movant must show as a prerequisite for preliminary injunctive relief is whether the "public interest would be served by the injunction." *Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 286 (4th Cir. 2002).

### III. DISCUSSION

A.     **Likelihood of Irreparable Harm to Plaintiffs Without the Injunction**

"Generally, 'irreparable injury is suffered when monetary damages are difficult to ascertain or are inadequate.'" *Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546, 551 (4th Cir. 1994) (quoting *Danielson v. Local 275*, 479 F.2d 1033, 1037 (2d Cir. 1973)). Plaintiffs claim that there are three forms of irreparable harm in the

4

instant case. First, Plaintiff's funds are suffering irremediable harm because the two pension funds are required to provide pension benefits to employees who provide evidence of their hours worked, regardless of whether Defendants honor their obligations. (Decl. of Kathy Cole at ¶ 16.) Because Defendants are not making the required payments or providing information on how many hours Defendants' employees work, the Plaintiff pension funds face an unfunded future obligation of an unknown magnitude. The pension funds calculate that their current assets are only seventy-seven percent of their existing accrued vested liabilities. (*Id.* at ¶ 17.) Absent a reliable and sufficient revenue stream from employers such as Defendants, in the form of paid obligations, the pension funds cannot be sustained. Second, Defendants' union employees face irreparable harm. Absent payments by the employer, employees may have their health and prescription drug benefits terminated. (*Id.* at ¶ 18.) Many employees have lost, or will lose, health benefits because Defendants are not making the payments they owe. Third, Defendants' financial histories indicate a threat that Plaintiffs will be unable to collect the funds as money damages. Not only have Defendants habitually disregarded their obligations to Plaintiffs, but they have also established a trend of avoiding other obligations. Defendants have "(1) failed to pay annual registration fees to the State of Virginia on a corporate charter; (2) failed to pay employment withholding tax; and (3) filed for bankruptcy to avoid, in part, an IRS tax lien." (Pls.' Mem. of Points and Authorities in Supp. of Mot. for Default J. and Permanent Injunctive Relief at 8-9 (citing *Michael Steven Hudgins v. IRS*, 967 F.2d 973, 974-75 (1992))). This history creates a real risk that Defendants will continue to default on their obligations to Plaintiffs.

B.     **Likelihood of Harm to the Defendant With the Injunction**

Since Defendants have failed to appear or respond to any of the Plaintiff's complaints,

5

Defendants have not established that they would suffer harm were the Court to grant an injunction in favor of Plaintiffs. When this lack of injury to Defendants is weighed against the injuries to Plaintiffs discussed above, which Plaintiffs will continue to suffer absent an injunction, an injunction is clearly an appropriate remedy.

**C.    Plaintiffs' Likelihood of Success on the Merits**

Plaintiffs have also shown that they would likely succeed on the merits of their claim. Defendants have not refuted any of the Plaintiffs' claims. Plaintiffs' undisputed allegation that Defendants made late payments, incomplete payments, and altogether failed to make some payments to the employee benefit funds, in violation of the collective bargaining agreement, is a clear violation of ERISA. 29 U.S.C. § 1145. Charles W. Gilligan, Counsel for Plaintiffs, has declared under penalty of perjury that he, as an experienced attorney in the area of employer delinquencies under ERISA, is unaware of any defenses that Defendants could have raised had they responded to the complaint. (Decl. of Charles W. Gilligan at ¶ 7.) Indeed, the Court is granting Plaintiffs' motion for default judgment contemporaneously with the instant motion. Therefore, the Court finds that Plaintiffs have shown a likelihood of success on the merits.

**D.    The Public Interest**

There is an indication that the public interest weighs heavily in favor of Plaintiff. Congress has determined there is a public interest in protecting multi-employer employee benefit funds such as the Plaintiffs. 29 U.S.C. § 10001(a). No competing interest is readily apparent, and Defendants have not responded to provide any competing interest which could outweigh this congressional priority. Therefore, the public interest is best served by the issuance of the proposed injunction.

## IV. CONCLUSION

For the reasons stated above, Plaintiffs' motion for a permanent injunction is **GRANTED**. Plaintiffs' motion for a preliminary injunction, filed October 3, 2006, is **MOOT**. An injunction shall issue in a separate order. The Clerk is **DIRECTED** to send a copy of this Order to the parties.

    **IT IS SO ORDERED**.

                                        _____/s/_____
                                        Raymond A. Jackson
                                        UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
June 20, 2007